**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**
**CASE NUMBER: 4:25-cv-13756-JD**

| | |
|---|---|
| Dairyland Insurance Company,<br><br>                              Plaintiff,<br><br>v.<br><br><br>April J. Huggins, Randy Meyers, Connie L.<br>Hatfield, and Lenard J. Hatfield,<br><br>                          Defendants. | **SUPPLEMENTAL PLEADING IN**<br>**RESPONSE TO THE COURT'S ORDER** |

Plaintiff Dairyland Insurance Company ("Dairyland") respectfully submits this single consolidated supplement as ordered by this Court on July 21, 2026, and would show as follows:

I.     **Subject-Matter Jurisdiction**

     a.  **In Response to Questions 1-3.**

1. Identifies each claimant, claim, and Policy coverage that Plaintiff contends was actually in controversy when this action commenced.
2. States the amount demanded or reasonably at issue with respect to each claim and provides competent documentation supporting that amount;
3. Identifies each Policy limit Plaintiff contends may be included in the jurisdictional calculation and explains why the implicated limits may properly be aggregated under the facts of this case;

When this action commenced, Connie L. Hatfield had submitted a demand for the Dairyland Policy's bodily injury limits of $25,000 each person and $50,000 each accident and property damage liability limits of $25,000 each accident. Lenard J. Hatfield submitted a separate demand for the Dairyland Policy's bodily injury limits and property damage limits in the same amounts. Thus, the Hatfield Defendants' claims amounted to $75,000.00. In support of this amount, the Hatfields' Demands are attached hereto as Exhibits 1 and 2. (*See also* Ex. A, Policy p. 2, Dkt. No. 6-2).

Further, each of the Hatfields' Demands threatened suit for an excess of policy limits if they were rejected. Exs. 1, 2. However, Dairyland was unable to accept the demand due to the coverage issues raised by the cancellation and reinstatement due to April Huggins's false representations. Additionally, the Demands attached the Hatfields' negligence action against April Huggins, for which Dairyland did not provide a defense due to these coverage issues. Exs. 1, 2. Thus, defense costs in excess of $0.01 were at stake when Dairyland filed the present action.

Additionally, when commencing this action Dairyland believed that Randy Meyers, who was a passenger in April J. Huggins's vehicle at the time of the underlying accident, would make a claim for liability and/or underinsured motorist bodily injury limits of $25,000 and property damage limits of $25,000. Further, MPD Electric Cooperative, Inc. ("MPD Electric") had a property damage claim for the cost of repairing a utility pole damaged during the accident and the South Carolina Department of Transportation ("SCDOT") had submitted a subrogation claim for property damage to a road sign that was damaged during the accident.

Further, when this action commenced, April J. Huggins' interest in the value of the disputed coverage period from August 28, 2025, until September 1, 2025, at 3:17 p.m., for which Dairyland seeks a declaration that no coverage was provided, was at stake. (*See* Amended Compl. ¶¶ 31-A). These disputed days of coverage have monetary value associated with them based on the premiums charged for the policy as if coverage had not lapsed which exceed at least one cent ($0.01). (*See* Ex. A, Policy p. 2, Dkt. No. 6-2).

The claims of Connie L. Hatfield and Lenard J. Hatfield for bodily injury and property damage limits, along with Randy Meyers's, MPD Electric's and the SCDOT's claims presented claims reasonably amounting to $75,000.00. The value of the defense costs for the Hatfields' underlying action exceeded  at least one cent ($0.01).  Additionally, the disputed coverage period

2

from August 28, 2025, to September 1, 2025, at 3:17 p.m.—for which Dairyland seeks a declaration that no coverage was provided—also had monetary value based on the premiums associated with those days exceeding one cent ($0.01). Therefore, the total amount in controversy at the time Dairyland filed this action exceeded $75,000.01 such that the requirements of 28 U.S.C. § 1332(a) were satisfied at that time.

### b. In Response to Questions 4-7.

4. States whether any underlying lawsuit arising from the September 1, 2025, accident had been filed when this action commenced and, if so, identifies the action, the relief demanded, the date the defense was tendered, and whether Dairyland had undertaken the defense;
5. If Plaintiff relies upon the value of a duty to defend, identifies any defense costs incurred or reasonably anticipated when this action commenced and provides competent evidence supporting that valuation;
6. If Plaintiff relies upon attorney's fees or expenses associated with this declaratory-judgment action, identifies the contractual or statutory basis permitting recovery of those amounts;
7. Explains, from the perspective of either Dairyland or the Defendants, the pecuniary result that the requested judgment would produce and why that result exceeded $75,000 when the action commenced;

Connie Hatfield and Lenard Hatfield filed a negligence action against April Huggins in the South Carolina Court of Common Pleas for the County of Darlington on September 26, 2025, bearing Case No. 2025-CP-1600942. This action alleges causes of action for negligence and negligence *per se*. Dairyland has not undertaken a defense of that action due to the present coverage dispute. As described above, Dairyland asserts that the defense costs associated with the underlying action may satisfy the amount in controversy requirement of 28 U.S.C. § 1332(a), as such costs are at stake if resolution of this claim indicated a defense and indemnification were owed to April Huggins for the September 1, 2025, accident. Dairyland further asserts that the amount in controversy is satisfied apart from those defense costs because the disputed coverage

period from August 28, 2025, to September 1, 2025, at 3:17 p.m.—for which Dairyland seeks a declaration that no coverage was provided—has a value exceeding at least one cent ($0.01).

In sum, judgment in favor of Dairyland would result in the loss of bodily injury and property damage liability coverage amounting to $75,000.00 to injured Defendants Connie Hatfield, Lenard Hatfield, and Randy Meyers as the remaining injured Defendants in this action. The value of the defense costs for the Hatfields' underlying action exceeds at least one cent ($0.01). Additionally, the days of coverage for which Dairyland seeks a declaration of no coverage have monetary value based on the premiums associated with each disputed day, which exceeds at least one cent ($0.01). Dairyland does not rely on attorney's fees or expenses associated with this declaratory judgment action. Therefore, a judgment in Dairyland's favor would render a pecuniary result exceeding $75,000.00 based on the amount in controversy at the time this action was commenced.

### c.  In Response to Questions 8-9.

8. Identifies the citizenship of Dairyland and each remaining Defendant, recognizing that a corporation is a citizen of its state of incorporation and the state of its principal place of business and that an individual's citizenship turns on domicile rather than residence alone; and
9. Addresses whether the addition of the South Carolina Department of Transportation as a Defendant in the Amended Complaint affected diversity jurisdiction and, if so, whether its subsequent dismissal cured any jurisdictional defect, including whether relief under Rule 21 is necessary or appropriate.

Plaintiff Dairyland Insurance Company is an insurance company organized and existing under the laws of the State of Wisconsin with its principal place of business in the State of Wisconsin. (Dkt. No. 6, Amended Compl. ¶ 1). Based on Dairyland's information and belief, Defendant April J. Huggins is a citizen of Darlington County, South Carolina as Dairyland's records indicate she resides in that county and, upon information and belief, intends to remain there. (Amended Compl. ¶ 2). Additionally, upon information and belief Connie Hatfield and

4

Lenard Hatfield are citizens of Darlington County, South Carolina as, upon information and belief, they reside and intend to remain there. (Dkt. No. 6, Amended Compl. ¶ 4-5; Compl. of Connie Hatfield and Lenard Hatfield ¶ 2, *Connie Hatfield and Lenard Hatfield v. April Huggins*, Case No. 2025-CP-1600942 (Ct. of Common Pleas Sept. 26, 2025)). Lastly, Randy Meyers, upon information and belief, is a citizen of Darlington County as he resides and intends to remain there. (Dkt. No. 6, Amended Compl. ¶ 3).

Though the addition of the SCDOT as a Defendant in the Amended Complaint may have affected diversity jurisdiction, any such impact was cured by the subsequent dismissal of the SCDOT as a defendant from this action. *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1166 (4th Cir. 1988) (holding complete diversity exists where a plaintiff voluntarily dismisses its case against a non-diverse defendant in the removal context as there is no risk the non-diverse party will be brought back into the case upon appeal).

However, to the extent that diversity did not exist at the time of filing the Amended Complaint, Dairyland would request that this response serve as its Motion that the Court exercise its authority "to dismiss a dispensable party whose presence spoils statutory diversity jurisdiction," under Rule 21 of the Federal Rules of Civil Procedure. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989). The SCDOT is not an indispensable party as its interests are severable and a decree without prejudice to its rights can be made. *Id.* No tactical advantage to Dairyland or other prejudicial impact will result from a determination of the remaining Defendants' rights without the SCDOT present. Rather, the SCDOT's claim, should it choose to still pursue those claims after its dismissal from this action, can be properly addressed independently of this action as it will not be bound by the Court's judgment as a non-party. *Auto-Owners Ins. Co. v. Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at *7 n.3 (D.S.C. July 11, 2023) (noting the Court's

judgment would not be binding on a non-joined party with a potential claim). Thus, relief under

Rule 21 of the Federal Rules of Civil Procedure is appropriate at this time.

## II.     Stipulation of the Hatfield Defendants

A corrected signed stipulation of the Hatfield Defendants is being filed contemporaneously

with this supplemental response.

## III.    Prerequisites for Default Judgment

In accordance with the Court's request, Dairyland submits the following supplemental

responses establishing that Defendants Randy Meyers and April J. Huggins were properly served,

failed to plead or otherwise defend, are not unrepresented minors or incompetent persons, and are

not entitled to protection from default judgment under Servicemembers Civil Relief Act pursuant

to Fed. R. Civ. P. 55(b)(2) and 50 U.S.C. § 3931.

### A.  In Response to Questions 1-4 Regarding Defendant Randy Meyers.

1. Identify the correct date on which Meyers was served and cite the operative proof of service;
2. Explain the discrepancy between the February 12, 2026, service date stated in DE 18 and the different date reflected on the docket;
3. Identify the basis for the March 5, 2026, response deadline stated in DE 18, including the terms and duration of any agreed extension; and
4. Supplement the existing military-status affidavit with the facts supporting counsel's conclusion that Meyers was not in military service. Plaintiff may satisfy this requirement through a current military-status report or other competent information satisfying 50 U.S.C. § 3931(b).

Defendant Randy Meyers was served on February 12, 2026. (Proof of Service of Randy

Meyers, Dkt. No. 14-1). The Plaintiff is unsure of the nature of the discrepancy between Docket

Entry 18 and the service date reflected on the docket, as Docket Entry 14-1. After review, it appears

that Docket Entries 18 and 14-1 indicate Randy Meyers was personally served on February 12,

2026. (Proof of Service of Randy Meyers, Dkt. No. 14-1; Req. for Entry of Default as to Def.

Meyers, Dkt. No. 18 ¶ 1). To the extent necessary, Dairyland would submit that Docket Entry 14-1

6

accurately reflects the date Randy Meyers was personally served with the Amended Summons and Complaint. (Proof of Service of Randy Meyers, Dkt. No. 14-1).

Additionally, Docket Entry 18 referenced a March 5, 2026, response deadline based on a calculation of 21 days for Randy Meyers as a newly added defendant to the Amended Complaint. (Req. for Entry of Default as to Def. Meyers, Dkt. No. 18 ¶ 2). However, even if Rule 15(a)(3) set the operative time for Randy Meyers to respond as 14 days after service of the Amended Complaint, Randy Meyers was still properly requested to be held in default by Dairyland on March 9, 2026, (Dkt. No. 18) and properly had default entered against him by the Clerk on March 10, 2026, (Dkt. No. 21), as these were both filed and entered after the 14-day period elapsed. There was no extension granted to Randy Meyers to submit an answer or responsive pleading to the Amended Complaint.

Lastly, in support of its conclusion that Randy Meyers was not in military service at the time of service of the Amended Complaint, the Plaintiff attaches military status reports demonstrating that Randy Meyers was not in active service at the time he was served or currently as Exhibit 3.

### B. In Response to Questions 1-7 Regarding Defendant April J. Huggins.

The Court has indicated that Plaintiff need not duplicate its showing of due diligence or reestablish its entitlement to serve Huggins by publication. Thus, the Plaintiff answers the following questions issued by the Court:

1. Identify the affidavit of publication, publisher's certificate, or other docket materials establishing that publication was completed in accordance with the Court's authorization;
2. Identify the newspaper in which notice was published and the dates and frequency of publication;
3. Confirm that the publication concerned the operative Amended Summons and Amended Complaint;
4. State when service by publication became complete and when Huggins's response was due;

5. Identify the materials establishing that Huggins did not appear, plead, or otherwise defend after expiration of that period;
6. Identify any existing materials establishing that Huggins is not an unrepresented minor or incompetent person; and
7. Provide an affidavit or declaration satisfying 50 U.S.C. § 3931(b), including the facts supporting Plaintiff's representation concerning Huggins's military status.

Docket Entries 25 and 25-1 reflect the affidavit of publication and publisher's certificate establishing that publication was completed in accordance with the Court's authorization. The Amended Summons and Complaint was published in The Darlington County News and Press, a newspaper of general circulation in Darlington County, South Carolina, once a week for three weeks on April 1, 2026, April 8, 2026, and April 15, 2026. (Dkt. No. 25-1). This publication concerned the operative Amended Summons and Amended Complaint. (Dkt. No. 25-1). Service by publication became complete upon the expiration of the week following the April 15, 2026, publication, which was April 22, 2026; thus, April J. Huggins's response was due upon the expiration of 21 days under Rule 12 of the Federal Rules of Civil Procedure, which was May 13, 2026. (Dkt. No. 26 ¶ 1-2). Even if Rule 15(a)(3)'s 14-day time period controlled April J. Huggins's time to respond to the Amended Summons and Complaint, this period had also expired when Plaintiff requested an entry of default on May 14, 2026. (Dkt. No. 26). Thus, the Clerk's entry of default against April J. Huggins on May 18, 2026, was proper under Rule 55(a) of the Federal Rules of Civil Procedure. (Dkt. No. 27).

As to the materials establishing that April J. Huggins did not appear, plead, or otherwise defend after the expiration of that period, Plaintiff would point to the record demonstrating a failure of Defendant Huggins to file an answer or other responsive pleading, or attempt to file a notice of appearance after that time. Additionally, Plaintiff has not received any correspondence or communications from April J. Huggins attempting to provide any such answer, responsive pleading, or attempt to appear or respond to the present action after her time to respond expired.

Finally, Plaintiff identifies Docket Entry 26-1, which contains counsel's sworn attestation that April J. Huggins is not a minor or incompetent person. (Dkt. No. 26-1 ¶ 8). This affidavit also contains counsel's sworn attestation that April J. Huggins is not in the military service of the United States. (Dkt. No. 26-1 ¶ 8). In support of this attestation, Plaintiff attaches as Exhibit 4 military status reports demonstrating that April J. Huggins was not in the military service of the United States during the time of publication, at the time her answer or responsive pleading was due, or currently.

## IV.    LEGAL SUFFICIENCY AND SCOPE OF THE REQUESTED RELIEF

As requested by the Court, Plaintiff submits the following supplemental memorandum answering the following requests for information issued by the Court:

1. **Identifies the precise legal theory or theories on which it seeks relief, including whether it seeks reformation, rescission, enforcement of the alleged cancellation, denial of coverage under the Policy's misrepresentation provision, or some combination of those remedies.**

Dairyland seeks to have the automobile insurance policy at issue reformed in a manner reflecting that no coverage was in effect from 12:01 a.m. on April 28, 2025, which was the date of cancellation, until after the September 1, 2025, accident. (Amended Compl. ¶¶ 30-43, Dkt. No. 6). Such a reformation would reflect coverage was only in effect from July 11, 2025, at 12:43 p.m. Central Time (as reflected in the Policy's Declarations) until August 28, 2025, at 12:01 a.m. Eastern Standard Time (as reflected in the Cancellation Notice). (Ex. A, Policy, Dkt. No. 6-2; Ex. B, Cancellation Notice, Dkt. No. 6-3). And, if the granted reformation includes reinstatement after the accident, that the Policy's effective dates after the accident would be from September 1, 2025, at 3:17 p.m. Eastern Standard Time, which was the end of the reinstatement call between April Huggins and Dairyland, until January 11, 2026, at 12:43 p.m. Central Time, the time zone on the Policy's Declarations Page. (Ex. A, Policy, Dkt. No. 6-2; Amended Compl. ¶ 43-A, Dkt. No. 6).

9

In the event that the Court would find that this ruling would require the Court to conclude that the Policy was properly cancelled on August 28, 2025, due to the nonpayment of policy premiums, Plaintiff also seeks a finding that the August 28, 2025, cancellation was proper and enforceable. (Amended Compl. ¶¶ 11-15, Dkt. No. 6).

2. **Identifies the governing elements and burden of proof under South Carolina law for each theory of relief.**

    a. **Reformation due to unilateral mistake:**

In order to reform a contract on the basis of unilateral mistake, "the party requesting reformation must prove that the mistake was 'induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation[.]'" *Mueller v. Generali-Us Branch*, 4 F. App'x 187, 190 (4th Cir. 2001) (quoting *Shaw v. Aetna Cas. & Sur. Ins. Co.*, 274 S.C. 281, 285, 262 S.E.2d 903, 905 (1980)) (alteration in original); Bessinger v. R-N-M Builders & Assocs., LLC, 421 S.C. 349, 363, 806 S.E.2d 731, 738 (Ct. App. 2017); *Crosby v. Protective Life Ins. Co.*, 293 S.C. 203, 208, 359 S.E.2d 298, 301 (Ct. App. 1987) (noting same).

To state a claim for fraud, the following must be shown by clear and convincing evidence: (1) "a representation;" (2) "its falsity;" (3) "its materiality;" (4) "knowledge of its falsity or a reckless disregard of its truth or falsity;" (5) "intent that the plaintiff act upon the representation;" (6) "the hearer's ignorance of the falsity;" (7) "the hearer's reliance on the truth;" (8) "the hearer's right to rely thereon;" and (9) "the hearer's consequent and proximate injury." *O'Shields v. S. Fountain Mobile Homes, Inc.*, 262 S.C. 276, 281, 204 S.E.2d 50, 52 (1974). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This Rule has been held to require pleadings to include the time, place, and contents

10

of the false representations, as well as the identity of the person making the representations. *Harrison v. Westinghouse Savannah River Co.,* 176 F.3d 776, 784 (4th Cir.1999).

### b. Cancellation due to nonpayment of policy premiums:

South Carolina Code § 38-77-120 sets forth the requirements for an insurer to effectively cancel an automobile insurance policy in South Carolina. Section 38-77-120 requires the insurer to "deliver or mail to the named insured at the address shown in the policy a written notice of the cancellation." S.C. Code Ann. § 38-77-120. The notice of cancellation must (1) "be approved as to form by the director or his designee before use;" (2) set forth the date on which the cancellation becomes effective, which must not be "less than fifteen days after the date of the mailing or delivering" of the notice; (3) "state the specific reason" for cancellation and provide required explanations pursuant to § 38-77-390(B), unless it is due to the nonpayment of premiums as listed under § 38-77-123(B); (4) inform the insured of his right to request a review of the cancellation within fifteen days of receipt of notice, specifically containing the following statement:

### IMPORTANT NOTICE

Within fifteen days of receiving this notice, you or your attorney may request in writing that the director review this action to determine whether the insurer has complied with South Carolina laws in canceling or nonrenewing your policy. If this insurer has failed to comply with the cancellation or nonrenewal laws, the director may require that your policy be reinstated. However, the director is prohibited from making underwriting judgments. If this insurer has complied with the cancellation or nonrenewal laws, the director does not have the authority to overturn this action;

and (5) inform the insured of other available insurance and "state that the Department of Insurance has available an automobile insurance buyer's guide regarding automobile insurance shopping and availability, and provide applicable mailing addresses and telephone numbers, including a toll-free number, if available, for contacting the Department of Insurance." S.C. Code Ann. § 38-77-120(a)(1-5).

11

Though South Carolina courts have not specified the burden of proof under the current statute, it has previously been held that "[c]ancellation of an insurance policy is an affirmative defense which must be proved by a preponderance of the evidence," and courts have held that an insurer who demonstrates compliance with the 38-77-120(a) effectively cancel a policy for nonpayment of premiums. *Bannister v. Ohio Cas. Ins. Co.*, 314 S.C. 388, 391, 444 S.E.2d 528, 530 (Ct. App. 1994) (finding compliance with statute permits an effective cancellation for nonpayment of premiums); *Edens v. S.C. Farm Bureau Mut. Ins. Co.*, 279 S.C. 377, 380, 308 S.E.2d 670, 671 (1983) (applying a preponderance of the evidence standard prior to the current statute's enactment).

   3.  **Identifies the specific allegations of the Amended Complaint and the incorporated exhibits that Plaintiff contends establish each required element.**

       a.  **Reformation due to unilateral mistake:**

The Amended Complaint alleges April Huggins made "a representation" when she stated no accidents or losses had occurred between the Policy's cancellation on August 28, 2025, and the time of her call on September 1, 2025, and agreed the reinstatement of the Policy was conditional upon there having been no accident during that period. (Amended Compl. ¶¶ 20-23, 32, Dkt. No. 6). The Amended Complaint alleges the "falsity" of April Huggins's representations by stating she "falsely represented no accidents" had occurred during that period when she was actually involved in an auto accident prior to making the call to reinstate the Policy. (Amended Compl. ¶¶ 23-24, 33, Dkt. No. 6).

The Amended Complaint also alleges the "materiality" of April Huggins's false representations by asserting they were material to insurance contract between her and Dairyland, particularly in Dairyland's agreement to reinstate the Policy and backdate it to the date of cancellation as if no lapse in coverage had occurred. (Amended Compl. ¶¶ 24, 31, 34, Dkt. No. 6).

12

The Amended Complaint further alleges April Huggins made these false representations with the "knowledge of [their] falsity." (Amended Compl. ¶ 35, Dkt. No. 6).

The Amended Complaint next alleges that April Huggins made her false representations with the "intent that the plaintiff act upon the representation" by reinstating the Policy as if no lapse in coverage had occurred and procure coverage for the time of the accident which occurred during the lapse. (Amended Compl. ¶ 36, Dkt. No. 6). The Amended Complaint then alleges "the hearer's ignorance of the falsity" by asserting it was not aware that April Huggins had been involved in an automobile accident in the vehicle listed on the Policy prior to her call to reinstate the Policy. (Amended Compl. ¶ 37, Dkt. No. 6).

The Amended Complaint additionally alleges "the hearer's reliance on the truth" of April Huggins's false representations and that it had "the right to rely thereon" by asserting Dairyland relied on Ms. Huggins's statements during her reinstatement request, as evidenced by its express inquiries and conditional reinstatement of the Policy on her representations, and had a right to do so. (Amended Compl. ¶¶ 38, 39, 41, Dkt. No. 6). Lastly, the Amended Complaint alleges "the hearer's consequent and proximate injury" by asserting Dairyland would not have reinstated the Policy as if there had been no lapse in coverage at the time of the accident had she made truthful representations, now faces multiple claims under the Policy arising from the accident, and seeks to have the Policy reformed due to her fraudulent representations. (Amended Compl. ¶¶ 40-43, Dkt. No. 6).

### b. Cancellation due to the failure to remit policy premiums:

The Amended Complaint alleges the Policy was properly and effectively cancelled by Dairyland due to April Huggins's failure to remit policy premiums through complete compliance with S.C. Code Ann. § 38-77-120(a)(1-5). (Amended Compl. ¶ 14, Dkt. No. 6). Dairyland issued

a cancellation notice that was "approved as to form by the director or his designee before use" as demonstrated by the Cancellation Notice attached as Exhibit B, Docket Entry No. 6-1, to the Amended Complaint. (Amended Compl. ¶ 14, Dkt. No. 6; Ex. B, Cancellation Notice, Dkt. No. 6-3). The Amended Complaint also indicated the Cancellation Notice stated that the cancellation became effective on August 28, 2025, which was not "less than fifteen days after the date of the mailing or delivering" of the notice mailed on August 12, 2025. (Amended Compl. ¶ 14, Dkt. No. 6; Ex. B, Cancellation Notice, Dkt. No. 6-3). The attached Cancellation Notice also "state[d] the specific reason" for cancellation and provide required explanations pursuant to § 38-77-390(B), unless it is due to the nonpayment of premiums as listed under § 38-77-123(B), which in this case was nonpayment of premiums. (Amended Compl. ¶ 14, Dkt. No. 6; Ex. B, Cancellation Notice, Dkt. No. 6-3).

Additionally, the attached Cancellation Notice informed the insured of his right to request a review of the cancellation within fifteen days of receipt of notice, and contained the required statement set forth in South Carolina Code § 38-77-120(a)(4) (Amended Compl. ¶ 14, Dkt. No. 6; Ex. B, Cancellation Notice, Dkt. No. 6-3). Finally, the attached Cancellation Notice informed the insured of other available insurance and "state that the Department of Insurance has available an automobile insurance buyer's guide regarding automobile insurance shopping and availability, and provide applicable mailing addresses and telephone numbers, including a toll-free number, if available, for contacting the Department of Insurance." (Amended Compl. ¶ 14, Dkt. No. 6) (Ex. B, Cancellation Notice, Dkt. No. 6-3).

4. **Explains the legal effect of the alleged cancellation of the Policy effective August 28, 2025, including whether a declaration that the Policy was not in force at the time of the accident would resolve the coverage dispute independently of reformation or rescission.**

14

The cancellation of the Policy effective August 28, 2025, demonstrates that the Policy was not in effect during the September 1, 2025, accident. This supports the conclusion that Dairyland did not intend the Policy to provide coverage beginning on that date and, thereby, during the time of the accident. This further supports Dairyland's request that the Policy's effective dates be reformed to reflect a lapse in coverage from the date of cancellation until after the accident. Though a declaration that the Policy was not in force at the time of the accident would support the conclusion that no coverage existed at the time of the accident, this would not resolve the coverage dispute at hand as Dairyland was fraudulently induced into reinstating the Policy without noting a lapse occurred in the Policy's effective dates. (*See* Amended Compl., Ex. A, Policy, Dkt. No. 6-2).

5. **Explains the legal and contractual effect of the alleged reinstatement after the accident and identifies the precise relief necessary to prevent the reinstatement from operating retroactively.**

As Dairyland reinstated the Policy without indicating a lapse in coverage based on the fraudulent representations of April J. Huggins that no accident had occurred, Dairyland seeks to reform the Policy to accurately reflect Dairyland's intent. In order to prevent the reinstatement from operating to retroactively provide coverage during the lapse period on the basis of a fraudulent inducement, it is necessary that this Court issue an order declaring that Policy is reformed to provide coverage only from July 11, 2025, at 12:43 p.m. Central Time (as reflected in the Policy's Declarations) until August 28, 2025, at 12:01 a.m. Eastern Standard Time (as reflected in the Cancellation Notice). (Ex. A, Policy, Dkt. No. 6-2; Ex. B, Cancellation Notice, Dkt. No. 6-3). And, if the granted reformation includes reinstatement after the accident, that the Policy's effective dates after the accident would be from September 1, 2025, at 3:17 p.m. Eastern Standard Time, which was the end of the reinstatement call between April Huggins and Dairyland, until

January 11, 2026, at 12:43 p.m. Central Time, the time zone on the Policy's Declarations Page. (Ex. A, Policy, Dkt. No. 6-2; Amended Compl. ¶ 43-A, Dkt. No. 6).

6. **States whether Plaintiff seeks reformation, rescission, denial of coverage, or another remedy as the primary disposition and explains how each component of the requested relief conforms to the Amended Complaint and Rule 54(c)**

Dairyland seeks reformation of the Policy to reflect effective dates from July 11, 2025, at 12:43 p.m. Central Time (as reflected in the Policy's Declarations) until August 28, 2025, at 12:01 a.m. Eastern Standard Time (as reflected in the Cancellation Notice). (Ex. A, Policy, Dkt. No. 6-2; Ex. B, Cancellation Notice, Dkt. No. 6-3). And, if the granted reformation includes reinstatement after the accident, that the Policy's effective dates after the accident would be from September 1, 2025, at 3:17 p.m. Eastern Standard Time, which was the end of the reinstatement call between April Huggins and Dairyland, until January 11, 2026, at 12:43 p.m. Central Time, the time zone on the Policy's Declarations Page. (Ex. A, Policy, Dkt. No. 6-2; Amended Compl. ¶ 43-A, Dkt. No. 6). Dairyland also seeks a declaration that, on the basis of this reformation, the Policy does not provide liability coverage for the above-named remaining Defendants. (Amended Compl. ¶ B, Dkt. No. 6). Further, Dairyland seeks a declaration that it does not owe April J. Huggins the duty to indemnify or defend her against the claims asserted by the Defendants herein named. (Amended Compl. ¶ C, Dkt. No. 6).

7. **Identifies the exact date, time, and applicable time zone at which Plaintiff contends coverage resumed or the reformed Policy became effective and explains the contractual and factual basis for that position.**

Without the requested reformation, the Policy would reflect continuous effective dates from July 11, 2025, at 12:43 p.m. Central Time to January 11, 2026, at 12:43 p.m. Central Time. (Ex. A, Policy, Dkt. No. 6-2). With the requested reformation, the Policy would reflect effective dates from July 11, 2025, at 12:43 p.m. Central Time (as reflected in the Policy's Declarations)

16

until August 28, 2025, at 12:01 a.m. Eastern Standard Time (as reflected in the Cancellation Notice). (Ex. A, Policy, Dkt. No. 6-2; Ex. B, Cancellation Notice, Dkt. No. 6-3). And, if the granted reformation includes reinstatement after the accident, that the Policy's effective dates after the accident would be from September 1, 2025, at 3:17 p.m. Eastern Standard Time, which was the end of the reinstatement call between April Huggins and Dairyland, until January 11, 2026, at 12:43 p.m. Central Time, the time zone on the Policy's Declarations Page. (Ex. A, Policy, Dkt. No. 6-2; Amended Compl. ¶ 43-A, Dkt. No. 6).

Dairyland asserts it is entitled to this reformation on the basis of its unilateral mistake in reinstating the Policy with effective dates as if no lapse had occurred because of April J. Huggins's fraudulent representations during her call to reinstate the Policy after the accident occurred. (Amended Compl. ¶¶ 20-24, 30-41, Dkt. No. 6; Ex. A, Policy, Dkt. No. 6-2).

**8. Explains whether the allegations deemed admitted by default satisfy any heightened substantive burden applicable to the equitable relief sought.**

By her default, April J. Huggins is deemed to have admitted the factual allegations of the Amended Complaint. *See, e.g., Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). As set forth above, each of the necessary facts to establish the proper basis for the reformation of the Policy on the basis of unilateral mistake induced by fraud were alleged by Dairyland in its Amended Complaint. (Amended Compl. ¶¶ 20-24, 30-41, Dkt. No. 6). Therefore, Dairyland has met its burden in establishing it is entitled to the relief it requests by clear and convincing evidence through April J. Huggins's admissions.

**9. Addresses whether and to what extent the default of Meyers, who is alleged to have been a passenger in the insured vehicle, establishes facts concerning Huggins's representations, Dairyland's reliance, or the reinstatement of the Policy.**

17

The default of Meyers establishes that he is deemed to have admitted the factual allegations of the Amended Complaint. *See, e.g., Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). This establishes that Defendant Meyers admits, and does not dispute, the alleged facts for the purposes of the entry of judgment in favor of Dairyland in this action.

**10. Identifies any allegation or issue that Plaintiff contends requires proof beyond the Amended Complaint and its incorporated exhibits under Rule 55(b)(2).**

Dairyland seeks reformation of the Policy as to Defendant April J. Huggins based upon unilateral mistake induced by fraud, such that the Policy reflects the following effective dates: from July 11, 2025, at 12:43 p.m. Central Time, (as reflected in the Policy's Declarations) until August 28, 2025, at 12:01 a.m. Eastern Standard Time (as reflected in the Cancellation Notice). (Ex. A, Policy, Dkt. No. 6-2; Ex. B, Cancellation Notice, Dkt. No. 6-3). And, if the granted reformation includes reinstatement after the accident, that the Policy's effective dates after the accident would be from September 1, 2025, at 3:17 p.m. Eastern Standard Time, which was the end of the reinstatement call between April Huggins and Dairyland, until January 11, 2026, at 12:43 p.m. Central Time for purposes of matching the time zone on the Policy's Declarations Page. (Ex. A, Policy, Dkt. No. 6-2; Amended Compl. ¶ 43-A, Dkt. No. 6).

In support of the fact that the reinstatement transaction was completed at 3:17 p.m. on September 1, 2025, Dairyland attaches Ms. Huggins's payment receipt reflecting a transaction completion time of 2:17 p.m. Central Time—i.e. 3:17 Eastern Time—as Exhibit 5. Although Dairyland requests that the reformation reflect an inception time of 3:17 p.m. Eastern Standard Time on September 1, 2025, Dairyland would agree to an inception time of 3:12 p.m. Eastern Standard Time if the Court determines that the earlier time better satisfies Rule 54(c) of the Federal Rules of Civil Procedure. That time corresponds to the beginning of the reinstatement call alleged

in the Amended Complaint and is consistent with Dairyland's requested relief. (Amended Compl. ¶ 31, Dkt. No. 6). Accordingly, Dairyland alternatively requests that the reformation reflect an inception time of 3:12 p.m. Eastern Standard Time.

## V. DISMISSED PARTIES AND SCOPE OF THE DECLARATION

The Plaintiff submits the following supplemental responses to the Court's request for additional information regarding the dismissed parties and the scope of the requested declaration.

1. **Whether either dismissed entity is a required party under Rule 19 of the Federal Rules of Civil Procedure.**

Neither MPD Electric nor the SCDOT is a required party under Rule 19 of the Federal Rules of Civil Procedure because these entities only have potential future claims under the policy, as Dairyland believes neither is actively pursuing their potential claims at this time. Thus, their interests will not be prejudiced as these dismissed parties will not be bound by the judgment issued by this Court. *Auto-Owners Ins. Co. v. Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at *7 n.3 (D.S.C. July 11, 2023) ("mere financial interests in the outcome of an insurance dispute remain insufficient to warrant joinder as required parties") (quotation omitted); *McKiver v. Murphy-Brown*, LLC, 980 F.3d 937, 952 (4th Cir. 2020) (holding that under Rule 19, "[t]he interest in question should be more than a financial stake, and more than speculation about a future event") (quotation omitted).

Further, MPD Electric and Dairyland reached an agreement with MPD Electric, wherein it agreed not to pursue its claims arising from the September 1, 2025, accident, resulting in its dismissal from this case. (Notice of Dismissal of MPD Electric, Dkt. No. 16). This further demonstrates that MPD Electric is not a required party to this action. *See Selective Ins. Co. of Am. v. Johnson*, No. CV 9:23-6458-RMG, 2024 WL 3744724, at *2 (D.S.C. Mar. 19, 2024) (holding a party who has agreed not to pursue its claim against an insurer, in that case via a Covenant Not

to Execute, was not a required party under Rule 19 because it had "no stake in the outcome" of the declaratory judgment action).

Finally, the dismissal of these parties from this action does not prejudice the remaining defendants, as each have separate and distinct claims that can be determined independently under the Policy, and the dismissed parties' potential claims can be determined if and when those claims are ever pursued. *See Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at *7 n.3 (D.S.C. July 11, 2023) (noting the Court's judgment would not be binding on a non-joined party with a potential claim).

### 2. Whether the requested declaration could impair or impede an interest claimed by either dismissed entity.

The requested declaration would not impair or impede an interest claimed by either dismissed entity. As noted above, MPD Electric was dismissed because it is no longer pursuing a claim under the Policy such that it does not have an interest at stake anymore. *See Johnson*, No. CV 9:23-6458-RMG, 2024 WL 3744724, at *2 (D.S.C. Mar. 19, 2024).  Additionally, the SCDOT, as a non-party, would not be bound by the declaration and could pursue its interest separately, if it so chooses, in the future. *See Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at *7 n.3 (D.S.C. July 11, 2023).

### 3. Whether the absence of either dismissed entity could expose an existing party to a substantial risk of multiple or inconsistent obligations.

The absence of these parties would not expose an existing party to a substantial risk of multiple or inconsistent obligations, as MPD Electric has agreed not to pursue its claim and the SCDOT's claim may be independently determined at a future date if it ever chooses to pursue its potential claim. *See Johnson*, No. CV 9:23-6458-RMG, 2024 WL 3744724, at *2 (D.S.C. Mar. 19, 2024);  *Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at *7 n.3 (D.S.C. July 11, 2023).

4. **Whether complete relief can be afforded among the parties presently before the Court.**

For the reasons stated above, complete relief may be afforded among the parties presently before the Court as the Court's judgment will only bind the parties named herein. *See Companion Specialty Ins. Co. v. Med James Inc.*, No. 3:15-CV-249-TLW, 2015 WL 13817419, at *8 (D.S.C. July 29, 2015) ("[c]omplete relief refers to relief as between the persons already parties, not as between a party and the absent person whose joinder is sought") (quoting *United States v. County of Arlington, Virginia*, 669 F.2d 925, 929 (4th Cir. 1982)).

5. **Whether either dismissed entity presently asserts or reasonably may assert a claim under the Policy arising from the September 1, 2025, accident.**

Though the SCDOT may assert a claim for property damage under the Policy arising out of the September 1, 2025, accident, such claims, upon information and belief, are not actively being pursued at this time and may be resolved independently of this action as a separate interest in the Policy in the future if it so chooses. *See Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at *7 n.3 (D.S.C. July 11, 2023).

6. **Whether the dismissal without prejudice of MPD Electric affects the scope or finality of any declaration the Court may enter.**

The dismissal of MPD Electric without prejudice will not affect the scope or finality of the declaration the Court may enter because this dismissal was filed as a result of MPD Electric's agreement that it would no longer pursue a claim under the Policy for the September 1, 2025, accident. (*See* Notice of Dismissal of MPD Electric, Dkt. No. 16). *See Selective Ins. Co. of Am. v. Johnson*, No. CV 9:23-6458-RMG, 2024 WL 3744724, at *2 (D.S.C. Mar. 19, 2024). Moreover, as with the SCDOT, MPD Electric would not be bound by the declaration and could pursue its interest separately, if it so chooses, in the future. *See Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at *7 n.3 (D.S.C. July 11, 2023).

**7. Each person or entity Plaintiff contends would be bound by the requested declaration and the legal basis for binding that person or entity.**

Only those Defendants remaining, including Defendants Connie Hatfield and Lenard Hatfield, Defendant Randy Meyers, and Defendant April J. Huggins, would be bound by the requested declaration. The legal basis for binding each of these Defendants is their inclusion in the present action as a reflection of their pending claims under the Policy arising from the September 1, 2025, accident. *See Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at \*7 n.3 (D.S.C. July 11, 2023) (noting that the "court's decision in this declaratory judgment is not binding on [a non-party] since he has not been made part of this case").

**8. Whether the declaration should be limited expressly to the rights and obligations of Dairyland and the parties presently before the Court.**

Based on the above, Dairyland requests that the Court issue a declaration affecting only the rights and obligations of the parties presently before the Court. *See Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at \*7 n.3 (D.S.C. July 11, 2023) (noting that the "court's decision in this declaratory judgment is not binding on [a non-party] since he has not been made part of this case").

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
CASE NUMBER: 4:25-cv-13756-JD**

Dairyland Insurance Company,

                  Plaintiff,

v.

April J. Huggins, Randy Meyers, Connie L.
Hatfield, and Lenard J. Hatfield,

                  Defendants.

**STATEMENT OF REQUESTED RELIEF
AND PROPOSED JUDGMENT**

Plaintiff includes in its supplemental memorandum this separately captioned statement setting forth the exact declaratory relief requested, in accordance with the Court's request for the following information under Section VI of its Order.

1. **Identify the Defendant or Defendants against whom each component of relief is sought.**

Dairyland seeks reformation of the Policy as to Defendant April J. Huggins based upon unilateral mistake induced by fraud, such that the Policy is reformed to reflect the following effective dates: from July 11, 2025, at 12:43 p.m. Central Time, (as reflected in the Policy's Declarations) until August 28, 2025, at 12:01 a.m. Eastern Standard Time (as reflected in the Cancellation Notice). (Ex. A, Policy, Dkt. No. 6-2; Ex. B, Cancellation Notice, Dkt. No. 6-3). And, if the granted reformation includes reinstatement after the accident, that the Policy's effective dates after the accident would be from September 1, 2025, at 3:17 p.m. Eastern Standard Time, which was the end of the reinstatement call between April Huggins and Dairyland, until January 11, 2026, at 12:43 p.m. Central Time for purposes of matching the time zone on the Policy's Declarations Page. (Ex. A, Policy, Dkt. No. 6-2; Amended Compl. ¶ 43-A, Dkt. No. 6).

23

Dairyland also seeks a declaration as to Defendants Connie Hatfield, Lenard Hatfield, Randy Meyers, and April Huggins that, on the basis of this reformation, the Policy does not provide liability coverage for the above-named Defendants arising from the September 1, 2025, accident. (Amended Compl. ¶ B, Dkt. No. 6).

On this basis, Dairyland seeks a declaration as to Defendant April J. Huggins that it does not owe April J. Huggins the duty to indemnify or defend her against the claims asserted by the Defendants herein named. (Amended Compl. ¶ C, Dkt. No. 6).

2. **Distinguish the relief sought by default against Huggins and Meyers from the disposition requested as to the Hatfields.**

Dairyland seeks the same relief as to Defendants Connie Hatfield, Lenard Hatfield, and Randy Meyers. It requests that the Court declare the Policy does not provide liability coverage for these Defendants' claims arising from the September 1, 2025, accident. As to Defendant Huggins, Dairyland seeks a declaration that its Policy issued to her is reformed to reflect the effective dates as stated above in response to Question 1, and that Dairyland does not owe her the duty to indemnify her from these claims or defend her from the Hatfield Defendants' tort action.

3. **Identify the precise remedy requested, including whether Plaintiff seeks enforcement of cancellation, reformation, rescission, denial of coverage, or a combination of remedies.**

Dairyland seeks reformation of the Policy as to Defendant April J. Huggins based upon unilateral mistake induced by fraud, such that the Policy reflects the following effective dates: from July 11, 2025, at 12:43 p.m. Central Time, (as reflected in the Policy's Declarations) until August 28, 2025, at 12:01 a.m. Eastern Standard Time (as reflected in the Cancellation Notice). (Ex. A, Policy, Dkt. No. 6-2; Ex. B, Cancellation Notice, Dkt. No. 6-3). And, if the granted reformation includes reinstatement after the accident, that the Policy's effective dates after the accident would be from September 1, 2025, at 3:17 p.m. Eastern Standard Time, which was the

24

end of the reinstatement call between April Huggins and Dairyland, until January 11, 2026, at

12:43 p.m. Central Time for purposes of matching the time zone on the Policy's Declarations Page.

(Ex. A, Policy, Dkt. No. 6-2; Amended Compl. ¶ 43-A, Dkt. No. 6).  In the event that the Court

would find that this ruling would require the Court to conclude that the Policy was properly

cancelled on August 28, 2025, due to the nonpayment of policy premiums, Plaintiff also seeks a

finding that the August 28, 2025, cancellation was proper and enforceable. (Amended Compl. ¶¶

11-15, Dkt. No. 6).

Dairyland also seeks a declaration as to Defendants Connie Hatfield, Lenard Hatfield,

Randy Meyers, and April Huggins that, on the basis of this reformation, the Policy does not provide

liability coverage for the above-named Defendants arising from the September 1, 2025, accident.

(Amended Compl. ¶ B, Dkt. No. 6).

On this basis, Dairyland seeks a declaration as to Defendant April J. Huggins that it does

not owe April J. Huggins the duty to indemnify or defend her against the claims asserted by the

Defendants herein named. (Amended Compl. ¶ C, Dkt. No. 6).

4. **Identify the exact effective date, time, and applicable time zone of any requested reformation or reinstatement.**

Dairyland seeks reformation of the Policy as to Defendant April J. Huggins based upon

unilateral mistake induced by fraud, such that the Policy reflects the following effective dates:

from July 11, 2025, at 12:43 p.m. Central Time, (as reflected in the Policy's Declarations) until

August 28, 2025, at 12:01 a.m. Eastern Standard Time (as reflected in the Cancellation Notice).

(Ex. A, Policy, Dkt. No. 6-2; Ex. B, Cancellation Notice, Dkt. No. 6-3). And, if the granted

reformation includes reinstatement after the accident, that the Policy's effective dates after the

accident would be from September 1, 2025, at 3:17 p.m. Eastern Standard Time, which was the

end of the reinstatement call between April Huggins and Dairyland, until January 11, 2026, at

12:43 p.m. Central Time for purposes of matching the time zone on the Policy's Declarations Page. (Ex. A, Policy, Dkt. No. 6-2; Amended Compl. ¶ 43-A, Dkt. No. 6).

Although Dairyland requests that the reformation reflect an inception time of 3:17 p.m. Eastern Standard Time on September 1, 2025, Dairyland would agree to an inception time of 3:12 p.m. Eastern Standard Time if the Court determines that the earlier time better satisfies Rule 54(c) of the Federal Rules of Civil Procedure. That time corresponds to the beginning of the reinstatement call alleged in the Amended Complaint and is consistent with Dairyland's requested relief. (Amended Compl. ¶ 31, Dkt. No. 6). Accordingly, Dairyland alternatively requests that the reformation reflect an inception time of 3:12 p.m. Eastern Standard Time.

5. **Explain how each component of the requested relief is authorized by the Amended Complaint and Rule 54(c).**

Reformation based on unilateral mistake induced by fraud as to Defendant Huggins is authorized by the Amended Complaint and Rule 54(c) of the Federal Rules of Civil Procedure because such relief was requested in the Amended Complaint. (Amended Compl. ¶¶ 43-A, Dkt. No. 6); *see* Fed. R. Civ. P. 54(c). If a ruling that the cancellation of the Policy was effective on August 28, 2025, at 12:01 a.m. is determined to require a separate finding of relief, an assertion of a proper cancellation was included in the allegations of the Amended Complaint; otherwise, a finding that the Policy was cancelled on August 28, 2025, may form the basis of granting the specific dates of the reformation requested. (Amended Compl. ¶¶ 11-15, Dkt. No. 6).

A declaration that the Policy did not provide coverage at the time of the September 1, 2025, accident as to Defendants Connie Hatfield, Lenard Hatfield, Randy Meyers, and April Huggins is authorized by the Amended Complaint and Rule 54(c) because such relief was requested by the Plaintiff in its Amended Complaint. (Amended Compl. ¶ B, Dkt. No. 6).

26

A declaration that Dairyland does not owe April J. Huggins the duty to indemnify or defend her against the claims asserted by Defendants Connie Hatfield and Lenard Hatfield is authorized by the Amended Complaint and Rule 54(c) because such relief was requested by the Plaintiff in its Amended Complaint. (Amended Compl. ¶ C, Dkt. No. 6).

6. **Identify the persons or entities Plaintiff contends would be bound by the declaration and the legal basis for that position**

Dairyland requests the Court only issue a declaration limited to the rights and obligations of the parties presently before the Court. *See Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at *7 n.3 (D.S.C. July 11, 2023) (noting that the "court's decision in this declaratory judgment is not binding on [a non-party] . . .").

7. **State whether entry of the requested judgment would resolve every remaining claim involving every remaining party.**

The entry of this requested judgment would resolve every remaining claim involving each of the remaining parties to this action.

MURPHY & GRANTLAND, P.A.

*s/ J.R. Murphy*
J.R. Murphy, Esquire, (Fed. I.D. No. 3119)
Scarlett B. Smith, Esquire (Fed. I.D. No. 14565)
P.O. Box 6648
Columbia, SC  29260
803-782-4100
jrmurphy@murphygrantland.com
ssmith@murphygrantland.com
*Attorney for Plaintiff Dairyland Insurance Company*

August 4, 2026