**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Dairyland Insurance Company,<br><br>Plaintiff,<br><br>vs.<br><br>April J. Huggins, Randy Meyers, Connie L. Hatfield, and Lenard J. Hatfield,<br><br>Defendants. | Case No.: 4:25-cv-13756-JD<br><br>**ORDER** |

This matter is before the Court on Plaintiff Dairyland Insurance Company's ("Dairyland" or "Plaintiff") Motion for Default Judgment against Defendants April J. Huggins and Randy Meyers under Rule 55(b)(2) of the Federal Rules of Civil Procedure and for declaratory judgment as to Defendants Connie L. Hatfield and Lenard J. Hatfield. (DE 28.) By Order dated July 21, 2026, the Court held the Motion in abeyance and directed targeted supplementation concerning subject-matter jurisdiction, the prerequisites for default judgment, the legal basis and scope of the requested relief, the status of dismissed parties, and the precise declaratory relief sought. (DE 29.)

Plaintiff thereafter filed a consolidated supplemental pleading and supporting exhibits (DE 30), an Amended Stipulation Agreement executed by counsel for Dairyland and the Hatfields (DE 31), and a proposed Rule 58 judgment (DE 32). During further review, the Court identified an internal date discrepancy in the proof of personal service previously filed as to Huggins. By Text Order dated September 8,

2026, the Court held the Motion in abeyance. The Court then directed Plaintiff to file an amended proof of service or supplemental affidavit or declaration from the process server confirming the date, place, and manner of service on Huggins and explaining or correcting the discrepancy. (DE 33.) Plaintiff timely complied by filing a Notice of Filing Amended Proof of Service, an Amended Proof of Service, and an Affidavit of Process Server. (DE 34; DE 34-1; DE 34-2.) Those materials confirm that Huggins was personally served with the original Summons and Complaint on December 14, 2025. The papers also explain that the December 9 execution date on the original return was a typographical error and that the original Proof of Service was signed on December 19, 2025, after service. (DE 34-1; DE 34-2.)

The Court has reviewed the Motion, the original and Amended Complaints and their exhibits, Plaintiff's supplemental submissions, the Hatfields' stipulation, the September 8, 2026 Text Order and Plaintiff's responsive service materials, and the record as a whole. With that review, the Court concludes that the jurisdictional and procedural prerequisites for judgment have been satisfied and that Dairyland is entitled to the requested declaratory relief, as narrowed below.

## I. BACKGROUND

Dairyland issued Personal Auto Policy No. 11410394879 (the "Policy") to Huggins for a 2015 Chevrolet Impala. The Policy provided bodily-injury liability limits of $25,000 per person and $50,000 per accident and property damage liability limits of $25,000 per accident. (DE 6 ¶ 11; DE 6-2.) After Huggins failed to make a required premium payment, Dairyland issued a Cancellation Notice stating that

coverage would end on August 28, 2025, at 12:01 a.m. local time if the required payment was not received. Huggins did not make the payment before that deadline. (DE 6 ¶¶ 12-15; DE 6-3.)

On September 1, 2025, at approximately 2:35 p.m., Huggins was driving the insured Impala in Darlington County when it collided with a vehicle occupied by Connie L. Hatfield and Lenard J. Hatfield. Randy Meyers was a passenger in Huggins's vehicle. (DE 6 ¶¶ 16–19, 27.) At approximately 3:12 p.m. that same day, Huggins called Dairyland to reinstate the Policy and gave a recorded statement. Dairyland asked whether any accident or loss had occurred during the lapse and advised that reinstatement without a lapse was conditioned on there having been no such accident or loss. Huggins represented that none had occurred and agreed to that condition. Dairyland then reinstated the Policy and backdated the reinstatement as though no lapse had occurred. (DE 6 ¶¶ 20-24, 31–41.)

Dairyland alleges that Huggins's representation was false because the accident had occurred shortly before the reinstatement call. Dairyland also asserts that the representation was material, that Huggins knew it was false, and intended Dairyland to rely on it. Dairyland also contends it did not know of the accident and relied on the representation when it retroactively reinstated the Policy. (DE 6 ¶¶ 31–41.) Dairyland seeks reformation to restore the lapse in coverage, a declaration that the Policy afforded no liability coverage for the September 1 accident, and a declaration that Dairyland has no duty to defend or indemnify Huggins with respect to claims arising from that accident. (DE 6 at 7–8.)

The original Complaint, filed December 5, 2025, asserted the same theory and sought the same substantive relief against Huggins. (DE 1 at 5–7.) The Amended Complaint, filed February 4, 2026, added Meyers, the South Carolina Department of Transportation ("SCDOT"), and MPD Electric Cooperative, Inc., as parties with potential interests arising from the accident, but it did not assert a new claim for relief against Huggins. (DE 6.) SCDOT and MPD Electric were later dismissed. (DE 13; DE 16.) The Clerk entered default against Meyers on March 10, 2026, and against Huggins on May 18, 2026. (DE 21; DE 27.) The Hatfields have appeared through counsel and now expressly consent to entry of declaratory judgment in Dairyland's favor, while reserving their rights to pursue uninsured-motorist coverage under their own policies. (DE 31.)

## II. SUBJECT MATTER JURISDICTION

Dairyland invokes diversity jurisdiction under 28 U.S.C. § 1332(a). The party invoking federal jurisdiction bears the burden of establishing that the jurisdictional requirements are satisfied, and the defaults or consent of Defendants do not relieve the Court of its independent obligation to determine whether subject-matter jurisdiction exists. In an action seeking declaratory relief, "the amount in controversy is measured by the value of the object of the litigation." *Francis v. Allstate Insurance Co.*, 709 F.3d 362, 367 (4th Cir. 2013). In an insurer's declaratory judgment action, the amount may be measured by the concrete pecuniary consequence of the requested declaration to either side. *See Government Employees Insurance Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964).

The supplemented record establishes that the jurisdictional amount was satisfied when this action commenced. The Hatfields' claims implicated the Policy's $50,000 bodily-injury-per-accident liability limit and $25,000 property damage liability limit, placing $75,000 of liability coverage at issue. The record also establishes that the Hatfields had commenced an underlying negligence action against Huggins and that Dairyland disputed any obligation to defend that action because of the cancellation and reinstatement issues. (DE 30 at 1–4; DE 30-1; DE 30-2.) That presently disputed duty to defend the already-pending action carried pecuniary value in addition to the $75,000 liability exposure. *See Francis*, 709 F.3d at 367–69. The value of the object of this litigation therefore exceeded $75,000, exclusive of interest and costs, at commencement. The Court does not rely on the later-added claims of Meyers, SCDOT, or MPD Electric, the premium value of the disputed days, or attorney's fees incurred in this declaratory action to reach that conclusion.

Complete diversity also exists among the parties whose rights are adjudicated here. Dairyland is incorporated in Wisconsin and maintains its principal place of business there. The supplemental record identifies Huggins, Meyers, Connie Hatfield, and Lenard Hatfield as South Carolina citizens based on their domicile. (DE 30 at 4–5.) Thus, Dairyland is diverse from each remaining Defendant.

SCDOT was added after commencement and was voluntarily dismissed shortly thereafter. (DE 13.) To the extent SCDOT's intervening presence affected diversity jurisdiction, the Court finds SCDOT dispensable and, to the extent necessary,

exercises its authority under Rule 21 to drop SCDOT from the action. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). SCDOT is no longer a party; complete relief may be afforded among the remaining parties, and any potential claim SCDOT may later assert is not adjudicated by this Order. MPD Electric likewise has been dismissed and is not necessary to adjudicate the rights of the remaining parties. The supplemented record reflects that MPD Electric agreed not to pursue a claim under the Policy arising from the accident and therefore lacks a direct stake in the coverage determination. *See Selective Ins. Co. of Am. v. Johnson*, No. 9:23-cv-6458-RMG, 2024 WL 3744724, at *2 (D.S.C. Mar. 19, 2024). Neither dismissed entity will be bound by the judgment entered here. *See Auto-Owners Ins. Co. v. Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at *7 n.3 (D.S.C. July 11, 2023). The Court thus finds that neither dismissed entity is a required party whose absence prevents complete relief and is satisfied that it has subject-matter jurisdiction under § 1332(a).

## III. PREREQUISITES FOR DEFAULT JUDGMENT

### A. Randy Meyers

The operative return establishes that Meyers was personally served with the Amended Summons and Amended Complaint on February 12, 2026. (DE 14-1.) Because Meyers was first joined as a defendant in the Amended Complaint, his response was due twenty-one days after service, on March 5, 2026. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). He did not answer, appear, or otherwise defend. Dairyland requested entry of default on March 9, and the Clerk entered default on March 10. (DE 18; DE 21.)

Counsel's sworn affidavit states that, after investigation, Meyers was not a minor, incompetent person, or member of the military service. (DE 18-1.) Dairyland supplemented that affidavit with Department of Defense military-status reports reflecting that Meyers was not on active duty when served or at the time of the later search. (DE 30-3.) Nothing in the record suggests that Meyers is entitled to protection from default judgment under the Servicemembers Civil Relief Act. *See* 50 U.S.C. § 3931. The prerequisites for default judgment against Meyers are satisfied.

**B. April J. Huggins**

The supplemented service materials confirm that Huggins was personally served with the original Summons and Complaint on December 14, 2025.[1] (DE 34-1; DE 34-2.) Her response was due January 5, 2026, and she did not answer, appear, or otherwise defend before Dairyland filed the Amended Complaint on February 4, 2026. The question is therefore whether the Amended Complaint required new service upon Huggins before default judgment could be entered.

Rule 5(a)(2) provides that no service is required on a party who is in default for failing to appear, except when a later pleading asserts a new claim for relief against that party. *See* Fed. R. Civ. P. 5(a)(2). The original Complaint and the Amended Complaint assert materially the same claim against Huggins. Both allege that Huggins obtained retroactive reinstatement after the accident by falsely representing

[1] Although the Amended Proof of Service lists Wash Tub Laundry at 635 S. 5th Street, the process server's affidavit lists 638 S. 5th Street. (Compare DE 34-1, with DE 34-2.) Both attest that Huggins was personally served at Wash Tub Laundry on December 14, 2025. Because Rule 4(e)(2)(A) requires personal delivery to the individual, which both sworn materials establish, the Court finds the street number discrepancy immaterial. *See also* Fed. R. Civ. P. 4(l)(3). No further supplementation is necessary.

that no loss had occurred during the lapse and both seek reformation so that coverage begins only after the accident. The operative papers also seek a declaration that the Policy affords no coverage for the accident; and both seek a declaration that Dairyland owes no duty to defend or indemnify Huggins with respect to claims arising from it. (Compare DE 1 at 3–7, with DE 6 at 3–8.) The Amended Complaint added parties and allegations concerning their potential interests, but it did not add a new claim for relief against Huggins.

Huggins was, therefore, already in default for failing to appear when the Amended Complaint was filed, and Rule 5(a)(2) did not require service of that pleading upon her. Dairyland later attempted to serve the Amended Complaint by publication, but the Court does not rely on that attempted publication in determining whether Huggins is subject to default judgment. Because service of the Amended Complaint was unnecessary under Rule 5(a)(2), the Court need not decide whether the later publication independently satisfied Rule 4 or South Carolina law.

The Clerk entered default against Huggins on May 18, 2026. (DE 27.) Counsel also submitted an affidavit stating that, after diligent investigation, Huggins was not a minor, incompetent person, or member of the military service, and Dairyland supplemented that affidavit with multiple Department of Defense military-status reports reflecting no active-duty status on the relevant dates. (DE 26-1; DE 30-4.) The Court finds the requirements of Rule 55 and 50 U.S.C. § 3931 satisfied as to Huggins.

### C. Effect of Default

A defaulting defendant admits the well-pleaded factual allegations of the complaint, though not legal conclusions or an entitlement to relief unsupported by those facts. *See Ryan v. Homecomings Financial Network*, 253 F.3d 778, 780 (4th Cir. 2001). The Court must, therefore, determine whether the admitted facts, together with the incorporated exhibits and the supplemented record, establish Dairyland's entitlement to the declaratory and equitable relief requested. Because the relief is declaratory and equitable and the record is sufficient to make that determination, no evidentiary hearing is necessary under Rule 55(b)(2).

## IV. REFORMATION AND COVERAGE

### A. Reformation Based on Unilateral Mistake Induced by Fraud

Dairyland has clarified that its primary merits theory is reformation of the Policy based on unilateral mistake induced by fraud, followed by a declaration of no liability coverage and no duty to defend or indemnify. (DE 30 at 9–18, 23–27.) South Carolina law permits reformation for unilateral mistake when the mistake was "induced by the fraud, deceit, misrepresentation, concealment, or imposition in any form of the party opposed in interest to the reformation" without negligence on the part of the party claiming the right to reformation. *Mueller v. Generali-U.S. Branch*, 4 Fed. Appx. 187, 190 (4th Cir. 2001) (quoting *Shaw v. Aetna Casualty & Surety Insurance Co.*, 262 S.E.2d 903, 905 (S.C. 1980)). Fraud requires clear and convincing proof of a representation, falsity, materiality, knowledge of falsity or reckless disregard, intent that the hearer act, the hearer's ignorance of the falsity, reliance, a

right to rely, and resulting injury. *See O'Shields v. Southern Fountain Mobile Homes, Inc.*, 204 S.E.2d 50, 52 (S.C. 1974).

The well-pleaded allegations admitted by Huggins establish each of those facts. Huggins represented that no accident or loss had occurred during the lapse. That representation was false and material. She knew the accident had occurred and intended Dairyland to reinstate the Policy without a lapse. Dairyland did not know of the accident, and it relied on the representation when it retroactively reinstated coverage. Dairyland faces claims that would otherwise fall within the backdated period. (DE 6 ¶¶ 20-24, 31–41.) Those allegations are pleaded with particularity and are consistent with the incorporated Policy and Cancellation Notice.

The admitted facts also establish that Dairyland's mistake was not attributable to negligence on its part. Dairyland expressly asked whether any accident or loss had occurred during the lapse, expressly conditioned reinstatement without a lapse on the absence of such a loss, and had no knowledge of the accident when it acted on Huggins's contrary representation. (DE 6 ¶¶ 37–41.) Taken as admitted and considered with the documentary record, those facts establish by clear and convincing evidence the fraudulent inducement and resulting unilateral mistake necessary for reformation. The Court thus concludes that reformation is appropriate. Because reformation fully resolves the coverage controversy presented, the Court need not grant separate rescission relief or decide whether the Policy's misrepresentation provision provides an independent basis for denying coverage.

**B. Cancellation and the Reformed Coverage Period**

The Cancellation Notice states that the Policy would terminate for nonpayment on August 28, 2025, at 12:01 a.m. local time if the required payment was not received before then. (DE 6-3.) The Amended Complaint alleges that the required payment was not made and that the cancellation became effective at that time. (DE 6 ¶¶ 12–15.) Those allegations are admitted by Huggins, and the documentary record is consistent with them. The Court therefore finds that the Policy was canceled effective August 28, 2025, at 12:01 a.m. local time.

Dairyland's supplement asks primarily that the reformed Policy reflect coverage resuming at 3:17 p.m. Eastern Time on September 1, 2025, but expressly agrees to a 3:12 p.m. inception time if the earlier time better conforms to Rule 54(c). (DE 30 at 25–26.) Rule 54(c) provides that a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." The original and Amended Complaints allege that the reinstatement call began at 3:12 p.m. and seek reformation so that coverage begins after the 2:35 p.m. accident. The specific 3:17 p.m. inception time first appears in the supplemental submission. (DE 1 ¶¶ 15–19, 35; DE 6 ¶¶ 20–24, 43; DE 30 at 25–26.)

The Court thus adopts the earlier, pleaded time. Personal Auto Policy No. 11410394879 is reformed to reflect a lapse in coverage beginning August 28, 2025, at 12:01 a.m. local time, with coverage resuming at 3:12 p.m. Eastern Time on September 1, 2025. The accident occurred at approximately 2:35 p.m. on September

1, during that lapse. The Policy consequently affords no liability coverage for claims against Huggins arising from that accident.

For the same reason, Dairyland owes Huggins no duty under the Policy to defend or indemnify her with respect to claims arising from the September 1 accident that are adjudicated by this action, including the Hatfields' underlying negligence claims. Meyers's default likewise precludes him from contesting the resulting coverage determination as a party to this action.

## V. THE HATFIELDS AND SCOPE OF THE DECLARATION

The Hatfields have appeared and, through counsel, expressly consent to declaratory judgment in Dairyland's favor that the Policy affords no coverage for the September 1, 2025, accident. Their Amended Stipulation Agreement reserves only their right to pursue uninsured motorist coverage under their own policies. (DE 31.) The Court accepts that stipulation. Nothing in this Order adjudicates the existence, amount, or availability of uninsured motorist coverage under any policy issued by an insurer other than Dairyland.

The declaration entered here is limited to the rights and obligations of Dairyland, Huggins, Meyers, Connie Hatfield, and Lenard Hatfield. Neither SCDOT nor MPD Electric is presently a party, and neither is bound by this judgment. *See Auto-Owners Insurance Co. v. Leysath*, No. 3:22-CV-4035-SAL, 2023 WL 11886065, at *7 n.3 (D.S.C. July 11, 2023). No rights of any other nonparty are adjudicated.

## VI. CONCLUSION

For the reasons above, Plaintiff's Motion for Default Judgment and Declaratory Judgment (DE 28) is **GRANTED**. Default judgment is entered against Defendants April J. Huggins and Randy Meyers, and declaratory judgment is entered in favor of Dairyland and against the remaining Defendants as follows:

1. Personal Auto Policy No. 11410394879 is reformed to reflect a lapse in coverage beginning August 28, 2025, at 12:01 a.m. local time, with coverage resuming at 3:12 p.m. Eastern Time on September 1, 2025.
2. As between the parties bound by this judgment, the Policy affords no liability coverage for claims against Huggins arising from the September 1, 2025 automobile accident at issue in this action.
3. Dairyland owes April J. Huggins no duty under the Policy to defend or indemnify her with respect to claims arising from that accident that are adjudicated by this action.
4. This declaration binds only Dairyland, April J. Huggins, Randy Meyers, Connie L. Hatfield, and Lenard J. Hatfield. It does not bind SCDOT, MPD Electric Cooperative, Inc., or any other nonparty, and it does not adjudicate the Hatfields' reserved rights to pursue uninsured-motorist coverage under their own policies.

This Order resolves all remaining claims among all remaining parties. The Clerk is **DIRECTED** to enter a separate final judgment under Rule 58 consistent with this Order and to close the case.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
September 28, 2026